**Not for Publication**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANTHONY P., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No.: 21-17714 (ES) <br><br> **OPINION** |

**SALAS, DISTRICT JUDGE**

Plaintiff Anthony P. appeals the decision of the Commissioner of Social Security (the "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (the "Act"), 42 U.S.C. §§ 401 *et seq.* and 1381 *et seq.* (*See* D.E. No. 1). For the reasons set forth below, the Court **AFFIRMS** the decision of the Commissioner.

**I.  BACKGROUND**

On February 27, 2015, Plaintiff filed applications for DIB and SSI alleging disability beginning on November 5, 2014. (D.E. No. 6, Administrative Record ("R.") at 206–19). The claim was denied initially and on reconsideration. (*Id.* at 79–131). Plaintiff filed a written request for a hearing, which was held on July 7, 2017. (*Id.* at 46–78). Plaintiff was represented by counsel and a vocational expert testified. (*Id.* at 619). On October 27, 2017, the Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's applications for DIB and SSI. (*Id.* at 616–18). The ALJ held that Plaintiff was not disabled under the Act because Plaintiff had the residual functional

capacity ("RFC") to perform work for which there exists a significant number of jobs in the national economy. (*Id.* at 623). Specifically, the ALJ determined that Plaintiff had the RFC to

> perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to performing simple routine tasks; as to the use of judgment and dealing with changes in [the] work setting [Plaintiff] is limited to simple work-related decisions and can frequently respond appropriately to supervisors; occasionally respond appropriately to coworkers and the general public.

(*Id.*). On October 22, 2018, the Appeals Council denied Plaintiff's request for review, and Plaintiff then filed an appeal before the Court. (*Id.* at 634–37 & 607–09). The Commissioner sought a voluntary remand for further proceedings, which the Court granted on March 27, 2019. (*Id.* at 610). Pursuant to the Court's remand order, the Appeals Council directed the ALJ to (i) further consider medical opinion evidence, and explain the weight given to such evidence; (ii) "[f]urther evaluate [Plaintiff's] alleged symptoms and provide rationale in accordance with" the relevant disability regulations pertaining to the evaluation of symptoms; (iii) further consider Plaintiff's RFC and provide specific references to record evidence in support of the assessed limitations; and (iv) "[i]f warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations" on the number of jobs in the national economy for which Plaintiff is able to perform work. (*Id.* at 551–52).

On January 9, 2020, the ALJ held a new hearing, at which Plaintiff and a vocational expert testified. (*Id.* at 551). On March 19, 2020, the ALJ again denied Plaintiff's applications for DIB and SSI. (*Id.* at 548). The ALJ held that Plaintiff is not disabled under the Act because Plaintiff has the RFC to perform work for which there exists a significant number of jobs in the national economy. (*Id.* at 561). Specifically, the ALJ determined that Plaintiff has the RFC to

> perform a full range of work at all exertional levels but with the following non[-]exertional limitations: [Plaintiff] is limited to

>performing simple, routine, and repetitive tasks but not at a production rate pace, i.e., assembly line work; able to perform simple work-related decisions; able to occasionally interact with supervisors and co-workers but never work in tandem with co-workers; and never interact with the public.

(*Id.* at 556–57). Relying on vocational expert testimony, the ALJ found that an individual with the above RFC could perform work as a laundry laborer, cleaner, and dryer attendant. (*Id.* at 561). On August 4, 2021, the Appeals Council denied Plaintiff's request for review, making the ALJ's March 19, 2020 decision final. (*Id.* at 541).

On September 28, 2021, Plaintiff filed the instant appeal, which the Court has subject-matter jurisdiction to decide under 42 U.S.C. §§ 405(g) and 1383(c)(3). The appeal has been fully briefed. (*See generally* D.E. No. 10 ("Mov. Br."); D.E. No. 11 ("Opp. Br."); D.E. No. 12).

## II.     LEGAL STANDARD

### A.     Standard Governing Benefits

To qualify for either DIB or SSI, a claimant must show that he is "disabled" within the meaning of the Act. *See* 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). Disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A). The individual's physical or mental impairment, furthermore, must be "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(2)(A), 1382c(a)(3)(B).

"The Commissioner uses a five-step process when making disability determinations . . . ." *Dellapolla v. Comm'r of Soc. Sec.*, 662 F. App'x 158, 160 (3d Cir. 2016) (citing 20 C.F.R. §§ 404.1520, 416.920). "The claimant bears the burden of proof for steps one, two, and four," and

"[t]he Commissioner bears the burden of proof for the last step." *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987)). "Because step three involves a conclusive presumption based on the listings, no one bears that burden of proof." *Id.* at 263 n.2. If the determination at a particular step is dispositive of whether the claimant is or is not disabled, the inquiry ends. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

*Step One*. At step one, the claimant must show that he has not engaged in any substantial gainful activity since the onset date of his severe impairment. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If an individual engages in substantial gainful activity, he is not disabled under the Act, regardless of the severity of his impairment or other factors such as age, education, and work experience. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b). If the plaintiff demonstrates he has not engaged in substantial gainful activity, the analysis proceeds to step two.

*Step Two*. At step two, the claimant must show that his medically determinable impairments or a combination of impairments were "severe."[1] *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An "impairment or combination of impairments" is not "severe" unless it "significantly limits [the claimant's] physical or mental ability to do basic work activities." *See, e.g.*, *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (quoting 20 C.F.R. §§ 404.1520(c), 416.920(c)).

*Step Three*. At step three, the claimant may show, based on medical evidence, that his impairments met or equaled an impairment listed in the Social Security Regulations' "Listings of Impairments" in 20 C.F.R. § Part 404, Subpart P, Appendix 1 ("Listings").[2] *See* 20 C.F.R. §§

---

[1] For DIB, the claimant must show that his medically determinable impairments or a combination of impairments were "severe" as of the date last insured ("DLI"). *See* 20 C.F.R. § 404.1520(a)(4)(ii). SSI, on the other hand, "is a needs-based program, and eligibility is not limited based on an applicant's date last insured." *Bosserman v. Berryhill*, No. 16-0091, 2017 WL 4833436, at *1 n.3 (M.D. Pa. Oct. 25, 2017).

[2] For DIB, the claimant must make this showing as of the DLI. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant makes such a showing, he is presumptively disabled and entitled to benefits.  If he does not make the showing, he proceeds to step four.

*Step Four*.  At step four, the claimant must show that he lacked the RFC to perform his past relevant work.[3]  *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv); *see, e.g.*, *Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).  If the claimant lacked the RFC to perform his past relevant work, the analysis proceeds.  *See, e.g.*, *Plummer*, 186 F.3d at 428.

*Step Five*.  In the final step, the burden shifts to the Commissioner to show that there is a significant amount of other work in the national economy that the claimant can perform based on his age, education, work experience, and RFC.  *See* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  If the Commissioner shows that the claimant is able to perform jobs that exist in significant numbers in the national economy, the claimant is not entitled to benefits.  *See id.*

B. **Standard of Review**

The Court exercises plenary review of the ALJ's application of the law and reviews factual findings for "substantial evidence."  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *see also Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011).  Substantial evidence is more than a "mere scintilla" of evidence and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Although substantial evidence requires "more than a mere scintilla, it need not rise to the level of a preponderance."  *McCrea*, 370 F.3d at 360.

Importantly, the Court is bound by the ALJ's findings of fact that are supported by substantial evidence "even if [it] would have decided the factual inquiry differently."  *Hartranft v.*

---

[3]  For DIB, the claimant must make this showing as of the DLI.  *See* 20 C.F.R. § 404.1520(a)(4)(iv).

*Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).  "Where evidence in the record is susceptible to more than one rational interpretation, [the Court] must accept the Commissioner's conclusions." *Izzo v. Comm'r of Soc. Sec.*, 186 F. App'x 280, 284 (3d Cir. 2006).  Thus, the Court is limited in its review because it cannot "weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992).  Finally, while failure to meet the substantial evidence standard normally warrants remand, such error is harmless where it "would have had no effect on the ALJ's decision." *Perkins v. Barnhart*, 79 F. App'x 512, 515 (3d Cir. 2003).

### III.   THE ALJ'S DECISION

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 5, 2014, the alleged onset date of Plaintiff's disability.  (R. at 554).[4]

At step two, the ALJ determined that Plaintiff had the following severe impairments: anxiety disorder, depressive disorder, post-traumatic stress disorder, and personality disorder.  (*Id.*).

At step three, the ALJ considered Listings 12.04 for depressive, bipolar, and related disorders; 12.06 for anxiety and obsessive-compulsive disorders; and 12.15 for trauma and stressor-related disorders.  (*Id.* at 555).  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00.  The ALJ ultimately determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the impairments listed by the regulations.  (R. at 555–56).

---

[4]    While Plaintiff testified that he worked as a telemarketer after the alleged disability onset date, the ALJ found that this work did not rise to the level of substantial gainful activity.  (*Id.*).

At step four, the ALJ concluded that Plaintiff had the RFC to perform work at all exertional levels, with some non-exertional limitations. (*Id.* at 556–57). Specifically, the ALJ found that Plaintiff is able to perform simple, routine, and repetitive tasks—but not at a production rate pace, i.e., assembly line work—make simple work-related decisions, and occasionally interact with supervisors and co-workers. (*Id.* at 557). The ALJ further concluded that Plaintiff must never work in tandem with co-workers nor interact with the public. (*Id.*). Based on the record, the ALJ determined that Plaintiff was unable to perform any past relevant work. (*Id.* at 560).

Nevertheless, at step five, after considering Plaintiff's background, RFC, and vocational expert testimony, the ALJ found that there were jobs that existed in "significant numbers in the national economy" that Plaintiff could perform, including work as a (i) laundry laborer (101,411 jobs in the national economy), (ii) cleaner (81,856 jobs), and (iii) dryer attendant (3,068 jobs). (*Id.* at 561). As such, the ALJ found that Plaintiff was not disabled as defined by the Act. (*Id.* at 562).

## IV. DISCUSSION

Plaintiff challenges the ALJ's determination at steps three and four. (Mov. Br. at 22–40). The Court considers each of these challenges in turn.

### A. Step Three

Plaintiff argues that the ALJ erred at step three by finding that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of Listing 12.04, 12.06, or 12.15. (*Id.* at 23). The Commissioner opposes, asserting that the ALJ reasonably found that Plaintiff's mental impairments did not satisfy the requirements of the relevant listings, and that Plaintiff's challenge amounts to a request for the Court to reweigh the evidence. (Opp. Br. at 11–17). The Court agrees with the Commissioner.

A claimant is presumptively disabled under Listing 12.04 if he satisfies the requirements

of 12.04A *and* either 12.04B or 12.04C.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  Similarly, a claimant is presumptively disabled under Listing 12.06 if he satisfies 12.06A *and* either 12.06B or 12.06C.  *Id.*  Lastly, a claimant is presumptively disabled under Listing 12.15 if he satisfies 12.15A *and* either 12.15B or 12.15C.  *Id.*  Without deciding whether Plaintiff satisfied 12.04A, 12.06A, or 12.15A, the ALJ found that Plaintiff did not satisfy either 12.04B or 12.04C; 12.06B or 12.06C; or 12.15B or 12.15C, respectively.  (R. at 555–56).  Plaintiff argues that, contrary to the ALJ's finding, he satisfied the criteria in 12.04C, 12.06C, and 12.15C.  (Mov. Br. at 23–29).  For the following reasons, the Court concludes that the ALJ's finding regarding 12.04C, 12.06C, or 12.15C (collectively, the "Paragraph C criteria") is supported by substantial evidence.

To satisfy the Paragraph C criteria, a claimant must have a mental disorder that is "serious and persistent," meaning there is a "medically documented history of the existence of the disorder over a period of at least [two] years," and there is evidence of both (i) medical treatment that is ongoing that diminishes the symptoms and signs of the disorder and (ii) despite diminished symptoms, only marginal adjustment, meaning the plaintiff has the minimal capacity to adapt to changes in his environment or to demands that are not already part of his daily life.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1.  An example of marginal adjustment includes an inability to function outside of one's home without substantial psychosocial support.  *See id.* § 12.00(G)(2)(c).  Where a plaintiff alleges error by the ALJ, "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination."  *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).  This means that a plaintiff must explain how he "might have prevailed at step three if the ALJ's analysis had been more thorough."  *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x. 810, 814 (3d Cir. 2016).  And a plaintiff must "affirmatively point[] to specific evidence that demonstrates he should succeed at step three."  *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir.

8

2016).

The ALJ found that the evidence failed to establish the Paragraph C criteria with respect to the marginal adjustment factor, noting that Plaintiff had a "more than minimal capacity to adapt to changes in his environment." (R. at 556). Specifically, "[t]he medical evidence d[id] not show such marginal adjustment that [Plaintiff] ha[d] minimal capacity to adapt to changes in the environment or some new demands." (*Id.*). The ALJ noted that the record did not show "that simple changes or increased demands have led to a deterioration of [Plaintiff's] functioning or inability to function outside the home." (*Id.*). For the following reasons, the Court finds that the ALJ's finding that Plaintiff does not satisfy the Paragraph C criteria is supported by substantial evidence.

*First*, Plaintiff argues that his anxiety and accompanying symptoms support a finding that the Paragraph C criteria was satisfied. (Mov. Br. at 25–26 & 29). To support his position, Plaintiff cites to state agency physician Dr. Ernesto Perdomo's diagnosis of severe obsessive-compulsive disorder and generalized anxiety with persistent depression. (*Id.* at 25). However, the ALJ specifically stated that he afforded little weight to Dr. Perdomo's opinion.[5] Indeed, the ALJ noted that Dr. Perdomo's opinion failed to "provide a specific function-by-function analysis regarding [Plaintiff's] ability to perform work related activities." (R. at 559). The ALJ further noted that Dr. Perdomo's opinion was "not supported by the objective evidence[,] including Dr. Perdomo's own evaluation" which "revealed relatively normal mental status for [Plaintiff] despite being very anxious and depressed." (*Id.*); *see Breazeale v. Kijakazi*, No. 20-2184, 2022 WL 883852, at *12

---

[5] Although the ALJ discusses Dr. Perdomo's findings at step four rather than step three, the ALJ's decision as a whole allows the Court to conduct a meaningful review of the ALJ's consideration of Dr. Perdomo's opinion. *See Cop v. Comm'r of Soc. Sec.*, 226 F. App'x 203, 208 (3d Cir. 2007); *see also Domkos v. Colvin*, No. 15-2660, 2016 WL 1732380, at *4 (D.N.J. May 2, 2016) (allowing an ALJ's analysis of relevant medical evidence in one step of a decision to support the ALJ's conclusion in another step).

9

(M.D. Pa. Mar. 24, 2022) (finding that discrepancy between the source opinion and that source's records was a valid consideration for the ALJ to take into account when assessing persuasiveness). Though Plaintiff additionally argues that his condition is such that it will affect his ability to function effectively at any job (Mov. Br. at 25), he has not affirmatively pointed to specific evidence that demonstrates he should have succeeded at step three. *See Woodson*, 661 F. App'x at 766. And to the extent that Plaintiff asks this Court to reweigh the evidence, it cannot do so. *See Williams*, 970 F.2d at 1182.

*Second*, Plaintiff argues that the ALJ's findings are conclusory, preventing meaningful review. (Mov. Br. at 30). The Court disagrees. An ALJ need not "use particular language or adhere to a particular format in conducting his analysis," as long as "there is sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004). Within his step three analysis, the ALJ specifically noted that Plaintiff performs necessary, normal household tasks such as cooking, cleaning, and shopping; that he gets along well with others and well with authority figures; that he worked during the relevant period; that he has friends and feels connected to his community; and that he has only some limitations in adaption and managing oneself. (R. at 555–56). The ALJ further indicated that the medical evidence of record shows that Plaintiff "did not usually complain about serious problems with adaptation and managing himself." (*Id.* at 556). In specifically evaluating the Paragraph C criteria, the ALJ stated the "medical evidence does not show [] marginal adjustment [such] that [Plaintiff] has minimal capacity to adapt to changes in the environment or some new demands." (*Id.*). Therefore, the Court finds that the ALJ provided a sufficient analysis that permits meaningful review.

*Third*, Plaintiff argues that the evidence is "clear" and "strongly supports the chronic and

severe mental impairments suffered by" Plaintiff.  (Mov. Br. at 30).  Specifically, Plaintiff argues that the ALJ did not properly give weight to the evidence provided by Plaintiff's treating therapist William Hoffman, non-treating physicians Dr. Perdomo and Dr. Steven Hertler, and licensed clinical social worker Cathy Lawson who is also Plaintiff's "pastor and friend." (*Id.* at 30–33; *see also* R. at 558–60).  Plaintiff's argument is unavailing.  "For claims filed before March 27, 2017, like this one, the ALJ assigns the weight he or she gives to a medical opinion."  *Loverso v. Kijakazi*, No. 21-2110, 2023 WL 2692392, at *9 (M.D. Pa. Mar. 29, 2023) (citing 20 C.F.R. § 404.1527(c)).  If a treating source's medical opinions on the nature and severity of a claimant's impairments are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the claimant's case record, the ALJ will generally assign it controlling weight.  *Id.*  "Where, as here, the ALJ does not give a treating source's medical opinion controlling weight, the ALJ analyzes the opinion in accordance with a number of factors: the '[l]ength of the treatment relationship and the frequency of examination,' the '[n]ature and extent of the treatment relationship,' the [s]upportability' of the opinion, the '[c]onsistency' of the opinion with the record as whole, the '[s]pecialization' of the treating source, and any other relevant factors."  *Id.* (alterations in original) (quoting 20 C.F.R. § 404.1527(c)(2)–(c)(6)); *see also Brownawell v. Comm'r of Soc. Sec.*, 554 F.3d 352, 355 (3d Cir. 2008) (noting that medical opinions may be afforded "more or less weight depending upon the extent to which supporting explanations are provided") (quoting *Plummer*, 186 F.3d at 429).

Contrary to Plaintiff's position, the ALJ provided an explanation for not crediting the opinions at issue in satisfaction of the above requirements.[6]  As to Plaintiff's treating therapist Mr.

---

[6] As previously noted, although the ALJ discussed the opinion evidence at issue at step four rather than step three, the ALJ's decision as a whole allows the Court to conduct a meaningful review of the ALJ's consideration of such opinion evidence.  *See Cop*, 226 F. App'x at 208; *see also Domkos*, 2016 WL 1732380, at *4.

Hoffman, the ALJ noted Mr. Hoffman's opinion that Plaintiff "has difficulties with impulse control and behavioral issues" and that he is "unable to maintain any type of permanent employment due to his lack of stability." (R. at 558). The ALJ provided that he gave little weight to Mr. Hoffman's opinions on Plaintiff's behavioral issues and inability to work because Mr. Hoffman "is not a medically acceptable source" and "the determination of disability is reserved to the Commissioner." (*Id.*). The ALJ further noted that Mr. Hoffman's relationship with Plaintiff spanned from 2007 to 2009, "well before [the] alleged onset date and the period under review"—which began on November 5, 2014. (*Id.* at 559).

As previously noted, the ALJ also explained that he afforded non-treating physician Dr. Perdomo's opinion—that his impairments "will affect his ability to function effectively at the job"—little weight because it lacked analysis as to Plaintiff's ability to perform work related activities and was inconsistent with Dr. Perdomo's own evaluation. (*Id.* at 558–59). The ALJ similarly explained that he afforded the opinion of non-treating physician Dr. Hertler—that Plaintiff "reported inability to work full[-]time but can work part[-]time" and that the administration "should reconsider denial of benefits"—little weight because he is a "non-treating practitioner who based his opinion upon a one-time evaluation and review of some of the claimant's medical history" and "determination of disability is reserved to the Commissioner." (*Id.* at 559). As to licensed clinical social worker Ms. Lawson, the ALJ noted that Ms. Lawson's opinion—that Plaintiff is "unable to work full-time but able to work part-time"—was afforded little weight because, again, the determination of disability is reserved for the Commissioner. (*Id.* at 560). Considering the record as a whole, the Court finds that the ALJ sufficiently articulated his consideration of the opinions at issue and noted how persuasive he found each to be. *See Loverso*, 2023 WL 2692392, at *9. To the extent that Plaintiff asks the Court to reweigh the

evidence, the Court cannot do so. *See Williams*, 970 F.2d at 1182.

*Fourth*, Plaintiff argues that the ALJ failed "to apply the correct legal standard concerning pain." (Mov. Br. at 34). The Court disagrees.[7] Contrary to Plaintiff's position, while an ALJ is required to consider a plaintiff's subjective complaints of pain, the ALJ may reject them when they are inconsistent with the objective medical evidence in the record. *See, e.g., Burns v. Barnhart*, 312 F.3d 113, 129 (3d Cir. 2002) (affirming ALJ's finding that plaintiff's subjective complaints of pain were not entirely credible where they were not supported by medical evidence); *see also Morel v. Colvin*, No. 14-2934, 2016 WL 1270758, at *4 (D.N.J. Apr. 1, 2016) ("The ALJ has discretion to evaluate claimant's credibility and arrive at an independent judgment in regards to the true extent of the pain alleged given medical findings and other evidence.").

Here, in considering Plaintiff's "statements about the intensity, persistence, and limiting effects of [his] symptoms," the ALJ determined that such statements were "not entirely consistent with the medical evidence and other evidence in the record." (R. at 558). Specifically, the ALJ cited to medical evidence provided by treating physician Dr. James Messina, noting that beyond "sleep disturbance, hostility, mood disturbance, and difficulty thinking," there were "no other abnormalities." (*Id.*). The ALJ also cited to Plaintiff's "normal mental status examination" and notes from his weekly therapy sessions at Trinitas Regional Medical Center revealing that "as of February 2016, he has been at the maintenance level of care." (*Id.*). Plaintiff's medication management notes "reveal him as emotionally stable," and indicate that Plaintiff was happy with the progress he made in therapy. (*Id.*). The ALJ also considered Plaintiff's daily activities. (*Id.*). For example, the record shows that Plaintiff lives in a house with his family and has a daily routine

---

[7] The Court notes that though Plaintiff raises this argument regarding the ALJ's findings at step three, the ALJ discussed Plaintiff's alleged pain and symptoms at step four. (R. at 557–60). Because an ALJ's decision is to be read as a whole, the Court considers Plaintiff's argument accordingly. *See Cop*, 226 F. App'x at 208.

13

that includes leaving the house and driving, taking care of his elderly mother, attending to his personal care, exercising, and traveling. (*Id.* at 557). Further, Plaintiff testified that he was working as a telemarketer up until the week before the hearing. (*Id.*). As such, the Court finds that the ALJ properly considered Plaintiff's alleged pain and symptoms and weighed that evidence with other findings in the record, concluding that they were inconsistent with objective evidence. *See Burns*, 312 F.3d at 129.

Therefore, the ALJ's finding that Plaintiff did not satisfy the Paragraph C criteria is supported by substantial evidence. At best, Plaintiff expresses disagreement with the ALJ's decision. But disagreement is not a basis to disturb an ALJ's decision that, as here, is supported by substantial evidence. *See Sisco v. Comm'r Soc. Sec.*, 840 F. App'x 685, 688 (3d Cir. 2020).

**B.     Step Four**

Plaintiff also challenges the ALJ's determination at step four, where he found that Plaintiff had the RFC to perform a full range of work at all exertional levels, with certain non-exertional limitations. (Mov. Br. at 37–40; R. at 556–57). A plaintiff's RFC is the most that a plaintiff can do despite his limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). When making an RFC determination, an ALJ is required to consider all evidence before him and "give some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000). And "the ALJ need only include in the RFC those limitations which he finds to be credible." *Salles v. Comm'r Soc. Sec.*, 229 F. App'x 140, 147 (3d Cir. 2007). A court defers to the ALJ's credibility determinations where the ALJ provides specific reasons supported by evidence in the record. *Williams v. Barnhart*, 211 F. App'x 101, 104 (3d Cir. 2006).

14

Plaintiff argues that the ALJ's determination as to Plaintiff's RFC is not supported by substantial evidence because (i) the ALJ did not specify what Plaintiff is capable of, (ii) the ALJ did not consider all medical evidence in the record in accordance with the Appeals Council's direction, and (iii) the ALJ did not "properly convey[]" the full extent of his mental impairments to the vocational expert. (Mov. Br. at 37–40). The Commissioner opposes, arguing that Plaintiff essentially argues that the ALJ should have weighed the medical opinion evidence differently. (Opp. Br. at 17). For the following reasons, the Court agrees with the Commissioner.

*First*, although Plaintiff argues that the ALJ did not specify the functions Plaintiff is capable of (Mov. Br. at 37), the ALJ discussed Plaintiff's capabilities by analyzing his past work experience, objective medical evidence, treatment plans, and opinion evidence. (R. at 557–60). The ALJ specifically noted that Plaintiff has a daily routine that includes several tasks such as caring for his mother, tending to his personal care, preparing meals, performing household chores, and traveling. (*Id*. at 557). The ALJ also noted that his impairments affect his ability to bend, lift, understand, and concentrate, but that he is capable of walking or paying attention for an hour, following instructions, and getting along well with authority figures. (*Id.*). As such, this argument is without merit.

*Second*, contrary to Plaintiff's argument (Mov. Br. at 37), the ALJ's RFC determination is in accordance with the Appeals Council's direction to further consider Plaintiff's symptoms alongside the medical evidence of record and explain the weight given to such evidence. (*See* R. at 551–52). Specifically, the ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but Plaintiff's statements regarding the "intensity, persistence, and limiting effects of these symptoms" were not consistent with the medical evidence. (*Id.* at 558). For example, the ALJ discussed Plaintiff's weekly therapy sessions

15

at Trinitas Regional Medical Center, noting that his treatment plan notes provided that Plaintiff was considered at a "maintenance level of care," "emotionally stable," and "interested in a leadership role in church." (*Id.*). The notes further revealed that Plaintiff "denied symptoms of anxiety, depression, or paranoia." (*Id.*). The ALJ also made specific determinations as to credibility, including treating psychiatrist Dr. Stephen Grelecki, non-treating physician Dr. Hertler, and state agency consultants Dr. Seymour Bortner and Dr. Robert Campion. (*Id.* at 559 (noting "[l]ittle weight" was given to Dr. Grelecki's opinion regarding "marked restriction of activities of daily living" because "it is wholly inconsistent with the medical evidence of record"); *see also id.* (noting that "little weight" was given to Dr. Hertler's statement that Plaintiff reported "inability to work full time" because it was "based solely on claimant report"); *see also id.* (noting that "[s]ome weight is given to" the state agency consultants' opinions that Plaintiff "has mild restriction [on] activities of daily living" because they "are familiar with the [Social Security] program and their opinions are somewhat consistent with the weight of the medical evidence of record")). The Court defers to the ALJ's credibility determinations given that he provided specific reasons for his findings supported by evidence in the record. *See Williams*, 211 F. App'x at 104; *see also Loverso*, 2023 WL 2692392, at *9. Therefore, the Court finds that the ALJ sufficiently considered the record evidence, indicated which evidence he rejected, and provided his reasons for discounting such evidence in reaching his RFC determination. *See Burnett*, 220 F.3d at 121.

*Third*, contrary to Plaintiff's argument (Mov. Br. at 38), the Court finds that the ALJ accurately conveyed Plaintiff's limitations to the vocational expert. During a hearing, the ALJ may pose the vocational expert with a hypothetical. *See Ramirez v. Barnhart*, 372 F.3d 546, 552 (3d Cir. 2004). The hypothetical involves the ALJ laying out the functional capacities of a hypothetical worker, and then the vocational expert states how many jobs are available for such a

worker. *See id.* at 554. The Third Circuit has held that a hypothetical posed to a vocational expert must include "all of the claimant's *credibly established* limitations but does not require that the vocational expert be apprised of limitations which have been determined not to affect the claimant's RFC." *Covone v. Comm'r Soc. Sec.*, 142 F. App'x 585, 587 (3d Cir. 2005) (emphasis added); *see also Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (noting same).

    Here, the ALJ posed the following hypothetical:

> Q: I'd like you to assume a hypothetical individual of the same age, education and work experience. There are no exertional limitations. The hypothetical individual is able to perform simple, routine and repetitive tasks, but not at a production rate of pace. So, for example, no assembly line work. The hypothetical individual can perform simple work-related decisions, can interact with supervisors occasionally, coworkers occasionally, but should not work in tandem and should never have interaction with the public. Given these limitations, would any of the past work be available?
>
> A: Your Honor, based on that RFC, I do not believe past work would be performed.
>
> Q: Would there be other work that would fit this hypothetical?
>
> A: Your Honor, I do believe there would be other occupations within the RFC. . . .

(R. at 599–600). Plaintiff argues that the ALJ failed to include the "full extent of [P]laintiff's mental impairments," specifically, his "frequen[t] absences from work due to the multiple therapy sessions and various groups to which he belongs and his 'bad days' when he is unable to participate." (Mov. Br. at 39). However, as previously discussed, the ALJ considered evidence regarding Plaintiff's therapy sessions and provided reasons as to why he afforded certain weight to certain evidence. (R. at 558–60). Specifically, the ALJ noted that he gave little weight to Dr. Hertler's opinion that Plaintiff would miss an unspecified number of days of work per month because he is a non-treating physician who based his opinion upon a "one-time evaluation and

review of some of the claimant's medical history." (*Id.* at 559–60). The ALJ also gave little weight to Plaintiff's treating psychiatrist, Dr. Grelecki, who stated that Plaintiff would miss more than three days of work per month due to his impairments, because it was "wholly inconsistent with the medical evidence of record." (*Id.* at 559). Finally, the ALJ found that Plaintiff has moderate limitations in social functioning, rather than mild limitations as suggested by the state agency consultants—assessing a *more* restrictive RFC based on his history of "social inappropriateness"—thus limiting Plaintiff's RFC to simple tasks, occasional interactions with coworkers or supervisors, and no interaction with the public. (*Id.* at 556–57 & 559). As previously noted, the Court defers to the ALJ's credibility determinations based on specific reasons supported by evidence in the record. *See Williams*, 211 F. App'x at 104; *see also Loverso*, 2023 WL 2692392, at *9. Therefore, the Court finds that the ALJ adequately captured Plaintiff's credibly established limitations in the hypothetical. *See, e.g.*, *Covone*, 142 F. App'x at 587.[8]

## V. CONCLUSION

For the foregoing reasons, the Court **AFFIRMS** the decision of the Commissioner. An appropriate Order accompanies this Opinion.

Dated: October 16, 2023
*s/ Esther Salas*
**Esther Salas, U.S.D.J.**

---

[8] Plaintiff states that when the ALJ "did include the full restrictions, the [vocational expert] stated that there would be no work. (Mov. Br. at 39). Plaintiff's assertion does not lead to a contrary conclusion. Although the ALJ posed an additional hypothetical regarding an individual who "would be off task [fifteen] percent of an eight-hour workday in addition to normal breaks and absent two days a month," to which the vocational expert responded that "there would be no occupations available," the additional hypothetical captured limitations which the ALJ determined were not credible. (*See* R. at 600–01). *See, e.g.*, *Covone*, 142 F. App'x at 587 (noting that a vocational expert must include "all of the claimant's *credibly established* limitations but does not require that the vocational expert be apprised of limitations which have been determined not to affect the claimant's RFC") (emphasis added).